UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAMONE ROBINSON,

                Petitioner,

-vs-

JAMES CONWAY, Superintendent of
the Attica Correctional Facility,

                Respondent.
_____

No. 05-CV-0542(VEB)

**DECISION AND ORDER**

**I.    Introduction**

By a petition for a writ of habeas corpus under 28 U.S.C. § 2254, petitioner *pro se* Ramone Robinson ("Robinson" or "petitioner") challenges the constitutionality of his state custody pursuant to judgment of conviction, following a jury trial in Erie County Court, on charges of second degree (intentional) murder (New York Penal Law ("P.L.") § 125.25(1)) and criminal possession of a weapon in the second degree (P.L. § 265.03(2)). Robinson is currently serving an aggregate sentence of 25 years to life.

In his petition, Robinson contends that the state court improperly admitted identification proof from two prosecution witnesses; he was deprived of his right to a fair trial by certain remarks made in the prosecutor's summation; and he was not afforded his Sixth Amendment right to the effective assistance of counsel. Respondent, addressing the merits of all of the claims, argues that none of them warrant habeas relief.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons that follow, Robinson's request for a writ of habeas

-1-

corpus is denied and the petition is dismissed. In light of this Court's disposition of the petition, Robinson's pending motion for an evidentiary hearing is denied as moot.

## II. Standard of Review

The Court's review of habeas petitions filed pursuant to § 2254 is governed by standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. *Brisco v. Ercole*, 565 F.3d 80, 87 (2d Cir. 2009) (citing *Messiah v. Duncan*, 435 F.3d 186, 196-98 (2d Cir.2006)). The Second Circuit has summarized the main points of the AEDPA inquiry as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers "clear and convincing evidence" of their incorrectness. 28 U.S.C. § 2254(e)(1).

*Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir.2006) (quoted in *Brisco*, 565 F.3d at 87).

## III. Analysis of the Petition

### A. Claim One: Erroneous Admission of Identification Testimony Derived From Unduly Suggestive Photograph Array

Robinson claims that he was denied due process of law as a result of the trial court's admission into evidence of two witnesses' in-court identifications of him as the perpetrator. Specifically, Robinson maintains that the pre-trial photographic array was unduly suggestive and thereby tainted the witnesses' subsequent in-court identifications.

Detective Minor testified that Shardae Thompson ("Thompson") described the shooter as

a short, light skinned black male with dark clothing and long braids. Transcript of Suppression Hearing at 9-10, 17-18 (hereinafter "H__"). Detective Scinta testified that witnesses described the suspect as a young black male with "cornrow"-type braids that went straight back. Detective Scinta did not recall if the witnesses mentioned the length of the braids. H.45. Both detectives stated that a photo array was used depicting six black males between the ages of seventeen and the early twenties, having cornrows or braided hair. All the filler individuals had long braids, while petitioner's braids were pushed out to the side. H.11-12, 23-24, 35-36. Thompson was shown the array in a non-suggestive manner and she selected petitioner's photograph, indicating it looked like the person who shot the victim, although she could not be sure unless she saw him in person. H.13-15, 25-27.

The array was subsequently shown to witness Larry Greene ("Greene"). H.16-17, 36-37. According to the police detectives, Greene selected petitioner's photograph after looking at the array for only a couple of seconds. H.37.

The state suppression court ruled that there was nothing inherently suggestive about the individual photographs in the arrays or the composition of the arrays as a whole. Robinson argues that the arrays were unduly suggestive because he was the only individual depicted having longer braids, and Thompson described the shooter as having long braids. On direct appeal, the Appellate Division, Fourth Department, held that the suppression court "properly determined that the photo array was not unduly suggestive[.]" *People v. Robinson*, 5 A.D.3d 1077, 1078, 773 N.Y.S.2d 662, 663 (App. Div. 4th Dept.) (citing *People v. Chipp*, 75 N.Y.2d 327, 336, 553 N.Y.S.2d 72, 552 N.E.2d 608, *cert. denied*, 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70; *People v. Parker*, 257 A.D.2d 693, 693-694, 684 N.Y.S.2d 300, *lv. denied*, 93 N.Y.2d 1015, 1024, 697

N.Y.S.2d 574, 583, 719 N.E.2d 935, 944), 2 N.Y.3d 805 (N.Y. 2004). The state courts' rulings, for the reasons discussed below, were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *accord, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The Supreme Court has established a two-step inquiry for evaluating the constitutionality of in-court identification testimony based on out-of-court identification procedures. *E.g.*, *Neil v Biggers*, 409 U.S. at 198. The inquiry requires a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification. *Id.*; *accord, e.g.*, *United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994). Even if the pretrial identification procedure is found to have been unduly suggestive, the trial court nevertheless may allow in-court identification testimony provided that the identification is independently reliable. *Manson v. Brathwaite*, 432 U.S. 98 (1977); *accord, e.g.*, *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986).

I turn first to the question of whether the photographic arrays prepared in this case were inherently and unduly suggestive. The Second Circuit has explained,

> The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents. If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs, *see, e.g.*, *United States v. Bennett*, 409 F.2d 888, 898 (2d Cir.) (array of six not so small as to be impermissibly

suggestive), *cert. denied*, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), or the use of suggestive comments, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit,'" *Jarrett v. Headley*, 802 F.2d at 41 (quoting *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir.1984)).

*Concepcion*, 983 F.2d at 377. However, due process does not require that "all of the photographs in the array be uniform with respect to a given characteristic." *Jarrett*, 802 F.2d at 41.

There does not appear to be any dispute that arrays were displayed to both witnesses in a manner that was not suggestive. The issue is whether Robinson's longer braids were not so distinctive a characteristic that they would suggest to the two witnesses that he was the likely perpetrator. Based upon the descriptions given to the police, all six photographs in the array depicted young adult males of African-American descent; the hairstyle of each man was "corn-row"-type braids. Although Robinson's braids appear visibly longer than those of the other individuals, the young men in two of the "filler" photographs are wearing longer braids which are pulled back from their faces. This is not a case such as *United States v. Fernandez*, 456 F.2d 638 (2d Cir. 1972), in which the Second Circuit found that the array "contained no photograph remotely resembling [the appellant] in skin color and hair-do." *Id.* at 642. *Contrast Fernandez*, 456 F.2d at 642 *with United States ex rel. Cannon v. Montanye*, 486 F.2d 263, 268 (2d Cir. 1973) (where one or two other individuals in five-person lineup wore a shirt of the color of the attacker, the inference of undue suggestion would weaken considerably), *cert. denied*, 416 U.S. 962 (1974). Notably, although Thompson selected petitioner's photograph, she said she could not be sure unless she saw him in person and thus the photographic array's composition apparently did not influence her in her subsequent identification of petitioner. With respect to Greene, he did not

describe the perpetrator as having long braids, so it cannot be said that the relative length of each subject's braids unduly influenced his selection.

I agree with respondent that Robinson has not demonstrated that the state court applied a federal legal standard incorrectly, or applied the appropriate standard in a way that was objectively unreasonable. *Dunlap v. Burge*, 583 F.3d 160, 165 (2d Cir. 2009) (citing *Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*) ("An 'unreasonable application of federal law is different from an incorrect application of federal law.'") (quoting *Williams v. Taylor*, 529 U.S. at 410, 120 S.Ct. 1495, and citing *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)).

Robinson cites a Second Circuit case involving the direct review of a criminal conviction, *United States v. Eltayib*, 88 F.3d 157 (2d Cir. 1996). I agree with respondent, however, that *Eltayib* is distinguishable. In that case, the defendant's photograph was the only one that fit the victim's description of the suspect–an African-American man with a "bushy afro"-type hairstyle. In addition, the defendant's skin tone was lighter than that of the other seven individuals in the photographic array. Since the defendant in *Eltayib* was the only one in the array to match the terse description given by the eyewitness, the Second Circuit held that the identification procedure was unduly suggestive. In the instant case, the six individuals all conformed to the more detailed description given by the two eyewitnesses–a young African-American male with "cornrow"-type braided hairstyle. Because the photograph arrays were not unduly suggestive, there is no need to address the "independent reliability" test. Robinson's claim that the identification testimony violated his due process rights is without merit and is dismissed.

### B. Claim Two: Prosecutorial misconduct during summation denied petitioner his right to a fundamentally fair trial.

Petitioner claims that he was deprived of his right to a fair trial when the prosecutor commented on uncalled alibi witnesses and the credibility of the testimony offered by witness Ricky Scott.

The habeas court's scope of review as to claims of prosecutorial misconduct is limited. In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. *E.g.*, *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *see also Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); *accord*, *e.g.*, *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998). A habeas petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). In determining whether prosecutorial misconduct caused substantial prejudice, the reviewing court should examine the severity of the misconduct, the measures adopted by the trial court to cure the misconduct, and the certainty of conviction absent the improper statements. *Bradley v Meachum*, 918 F.2d 338, 343 (2d Cir. 1990), *cert. denied,* 501 U.S. 1221 (1991).

The Court turns to the first alleged instance of misconduct, involving comments about

uncalled alibi witnesses. At the close of the prosecution's case, trial counsel informed the parties and the trial court that he intended to call two of the four potential witnesses listed, petitioner's mother and sister. *See* Trial Transcript at 287 (hereinafter "T.__"). Trial counsel indicated that all four of the witnesses would testify that Robinson was at his mother's house at the time of the shooting; however, counsel explained, that he preferred not to call all of them because their testimony would be cumulative in nature and "they'd have nothing to add." Trial counsel added that he would oppose any request by the prosecutor for a missing witness adverse inference jury charge. T.287-88. The trial court indicated that it would not issue an adverse inference charge in the event trial counsel declined to call other alibi witnesses than the two he had just named. T.344-45. Ultimately, trial counsel did not call petitioner's sister as an alibi witness. His mother, Sandra Robinson, was the only alibi witness called.

Trial counsel pointed out that petitioner's mother "said he was in the house" at his birthday party at the time of the shooting. Trial counsel urged the jury to take petitioner's mother's alibi testimony at face-value and explained that he did not need to "march in" every person at petitioner's birthday party since the defense was not required to prove anything. Trial counsel told the jurors that they "can't speculate to what these other witnesses may or may not have said." In response, the prosecutor pointed out that although petitioner's mother testified about many other people being present at petitioner's birthday party, none of them were presented as defense witnesses. T.422.

Trial counsel objected to this, noting that he had previously informed the court and the prosecutor that he believed the uncalled witnesses' testimony would have been cumulative. T.422-23. The trial court overruled the objection but admonished the jurors that they could

accept or reject summations since they were simply argument and that the burden of proof "is always on the prosecution." T.423. During the trial court's final instructions to the jury, it explained that the summations of defense counsel and the prosecutor were not evidence and their arguments could be rejected by the jurors as unreasonable, illogical or unsupported by the evidence. T.440-41. The jurors were told that it was their job to draw their own inferences and conclusions from the evidence presented. T.441. The court reiterated that the burden of proof never shifted from the prosecution.

Robinson has not cited any Federal cases holding that a prosecutor's comment regarding an uncalled alibi witness is improper. Respondent points out that the Second Circuit has held comments such as the one made by the prosecutor here to be entirely proper. *E.g.*, *United States v. Munoz*, No. 95-1070, 1995 WL 595088, *1 (2d Cir. Sept. 14, 1995) (unpublished opn.) ("Munoz argues that he was denied a fair trial because of the prosecutor's comment on the defendant's failure to call the car seller's agent to testify. However, in the Second Circuit, "[i]t is well established that the government may comment on the failure of a defendant to . . . support his own claims." *United States v. Coven*, 662 F.2d 162, 171 (2d Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). No constitutional violation occurs unless the comment necessarily indicates the defendant's own failure to testify. *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977)."). In *Coven*, 662 F.2d at 171, the appellants claimed that the government in its summation improperly commented on appellants' failure to call a particular witness, that the prosecutor made other improper comments including the suggestion that the missing witness would have damaged the defendant's case, and that the prosecutor implied to the jury that she had personal knowledge of

facts prejudicial to appellants which were not in evidence. The Second Circuit rejected the claim of prosecutorial misconduct:

> It is well established that the government may comment on the failure of a defendant to refute government evidence or to support his own claims.
>
> A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the jury "naturally and necessarily" would interpret the summation as comment on the failure of the accused to testify.

*Id.* (citing *United States v. Bubar*, 567 F.2d at 199; *United States v. Sindona*, 636 F.2d 792, 805-07 (2d Cir. 1980), *cert. denied*, __ U.S. __ , 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981); *United States v. Barnes*, 604 F.2d 121, 148 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Rodriguez*, 556 F.2d 638, 641-42 (2d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1233, 55 L.Ed.2d 762 (1978)). The comment challenged here by Robinson appears to have been entirely proper, and it cannot be interpreted as commenting on Robinson's failure to take the stand himself. Thus, I cannot find that there was prosecutorial misconduct in connection with the comment about the uncalled alibi witnesses.

Next, the Court turns to the allegedly improper comment about Ricky Scott ("Scott"), a prosecution witness who had testified at Robinson's first trial, which had resulted in a hung jury. Scott did not testify at the second trial, noting his intention to invoke his Fifth Amendment privilege against self-incrimination were he called to the stand. Scott's testimony from the first trial was read into the record at the second trial. The prosecutor made a comment about the reliability of Scott's testimony, stating that he did not "say too much, it was too dark outside." Trial counsel objected that it was improper for the prosecutor to impeach his own witness. The trial court admonished the jury that summations were argument counsel and the jury was "free to

accept or reject [counsels'] arguments." T.424.

Respondent argues that the prosecutor's brief remark concerning Scott was not improper, that he did not actually "impeach" the testimony but rather commented about its relative weight. In any event, what Robinson's real complaint seems to be is the admission of Scott's prior trial testimony instead of having him testify live at the second trial; Robinson contends that the jury's role evaluating the demeanor of witnesses was usurped as a consequence of Scott not testifying. Robinson contends that the prosecutor's comment further infringed upon the jury's exclusive province of judging witness credibility. Robinson's argument is creative but he has not demonstrated that the prosecutor's remark exceeded the bounds of fair comment.

Finally, Robinson claims that the prosecutor improperly exceeded the scope of proper redirect examination of Greene in connection with his testimony concerning the photographic array. Some background is necessary to give context to this claim. On cross-examination, defense counsel asked Greene twice whether it was true that he could not pick petitioner out of a line-up on June 28, 2000. T.329. Counsel continued, "[y]et you expect us to believe you now, you come into court and identify –." T.329. Greene then interjected that he had identified petitioner on June 28, 2000, in a photographic array, although he did not identify him months later at a line-up procedure. T.329-330. Trial counsel apparently made a strategic decision to follow up this line of questioning, and asked Greene if he told police on the date of the incident that petitioner was the shooter. T.330. Greene answered that the police officers had shown him a few photographs and that he had picked out petitioner's. T.330. Trial counsel then asked, "Y ou picked his picture out?" Greene answered, "Yes." T.330. Counsel repeated, "So you're able to pick his picture out on the night of the shooting?" Greene answered, "Y es." T.330. Implying a level of disbelief, trial

-11-

counsel then inquired, "A detective just happens to have his picture in his wallet?" Greene answered, "No." T.330. Trial counsel then questioned Greene regarding his inability to pick petitioner out of a line-up a few months later. T.330-31.(Apparently, petitioner was displayed with a hood covering his head during the line-up). Finally, defense counsel displayed photographs of the line-up for the witness and asked him to pick defendant out of the line-up photograph. T.330-32.

Given defense counsel's extensive inquiry into Greene's ability to pick petitioner out of the photo array and inability to pick petitioner out of a line-up, the trial court permitted the prosecutor to question the witness regarding the photo array. The prosecutor began by establishing that Greene viewed the photo array at his home at 10:20 a.m. on June 28, 2000. T.334-35. The trial court overruled defense counsel's objection to the prosecutor's line of questioning because "this was discussed on cross-examination [and] the door has been opened for discussion on redirect." T.335. The prosecutor then moved the array into evidence, over petitioner's objection. T.335.

The prosecutor proceeded to ask Greene about the questions he had answered on the page below the photo array, which indicated that Greene recognized someone in one of the photographs. Greene's signature was also pointed out. T.336-37. The prosecutor then asked Greene whether the person he chose from the photographs was in the courtroom and Greene identified petitioner. T.337. On re-cross-examination, defense counsel continued to question Greene about the photo array. Specifically, he asked Greene whether petitioner's picture "stick[s] out like a sore thumb" due to the length of his braids. T.338-39. Greene answered that it did not. T.338-39.

I agree with respondent that Robinson's claim does not present a constitutional error. First, trial counsel clearly "opened the door" to the allegedly objectionable testimony elicited during the re-direct examination of Greene. Second, the admission of a photo array at trial presents an issue of evidentiary law, which generally does not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As respondent points out, federal evidentiary law permits the introduction of photo arrays, and where there is no indication of "mug shots" being introduced, a defendant is not prejudiced. *See United States v. Giles*, Nos. 97-1663(L), 97-1666, 98-1015, 97-1664, 97-1684, 98-1016, 97-1665, 97-1722, 98-1017, 210 F.3d 356, 2000 WL 424142, *1 (2d Cir. Apr. 13, 2000) (unpublished opn.) ("The district court admitted two photo arrays, one of which included a photo of Bradshaw, for the purpose of allowing a witness to testify to having made a prior identification of Bradshaw from these arrays. Bradshaw argues that, under our decision in *United States v. Harrington*, 490 F.2d 487, 495 (2d Cir.1973), admission of the photo arrays was unduly prejudicial because it apprised the jury of his prior criminal record without his having first opened the door to such evidence. However, none of the photos in this array are, as Bradshaw characterizes them, 'mug shots.' Rather, they are all head-and-shoulders shots of casually dressed, young-adult men. Unlike mug shots, admission of these photo arrays was not 'equivalent to the introduction of direct evidence of a prior criminal conviction.' *Harrington*, 490 F.2d at 490. The three-part test that we laid out in *Harrington* for the admissibility of mug shots is therefore inapposite, see id. at 494, and the district court did not otherwise abuse its discretion in admitting the photo arrays against Bradshaw.").

Robinson's allegations do not provide a basis for concluding that any of the comments in the prosecutor's closing statement, taken singly or together, violated his Fifth Amendment due

process right to a fundamentally fair trial. Accordingly, Robinson's claim of prosecutorial misconduct is dismissed.

### C. Claim Three: Ineffective Assistance of Trial Counsel

In order to establish a claim of ineffective assistance of counsel, a defendant must show that his counsel provided deficient representation, and that the petitioner suffered prejudice as a result of that deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Prejudice requires a demonstration of a "reasonable probability" of a different outcome. *See id.* A reviewing court may review the *Strickland* prongs in either order, and there is no reason to consider both if a petitioner makes an inadequate showing on one. *Id.* at 697.

Robinson contends that trial counsel committed two errors which amounted to constitutionally ineffective representation: First, he faults his attorney for not calling alibi witnesses, and second, he assigns error to trial counsel's decision not to objection to the admission of Scott's testimony from the previous trial.

With regard to counsel's failure to call multiple alibi witnesses on his behalf, Robinson contends that he should have done so in order to have prevented the prosecutor from asking the court for an adverse inference charge. As respondent points out, the trial court did not give the jurors an adverse inference charge. T.344-45. Thus, Robinson cannot demonstrate any prejudice from counsel's decision as it related to the issuance or non-issuance of an adverse inference jury i instruction. Furthermore, as the Second Circuit has made clear, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 958 (1987); *see also, e.g.*, *United States v.*

*DeJesus*, No. 01-1479, 57 Fed. Appx. 474, 478, 2003 WL 193736, at *3 (2d Cir. Jan. 28, 2003) ("A trial counsel's 'decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.' *United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999). Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed.") (holding that counsel's decision not to call a character witness was grounded in strategy and not deficient, "even though [defendant] requested that she do so and provided her with contact information for potential witnesses"); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."); *Ryan v. Rivera*, No. 00-2153, 21 Fed. Appx. 33, 34, 2001 WL 1203391, at **1 (2d Cir. Oct. 9, 2001) ("Moreover, when a party challenges matters of trial strategy, such as the decision not to call a witness, even greater deference is generally warranted: '[A]n appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.' *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998)."); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.), *cert. denied*, 522 U.S. 846, 118 S.Ct. 130 (1997). Here, trial counsel made a tactical decision not to call additional alibi witnesses; as noted above, trial counsel informed the court that after speaking to the other potential alibi witnesses he concluded their testimony would have been cumulative to defendant's mother's testimony and they accordingly would have had "nothing to add." T.287-88. Robinson has not provided a basis for second-guessing this strategic decision; as respondent points out, counsel may have concluded that petitioner's mother was his best witness, or that calling additional witnesses was an unacceptable risk given the potential for

inconsistent accounts. Therefore, Robinson cannot meet the "deficient performance" prong of *Strickland*, and this claim must fail.

The second alleged error by trial counsel relates to the handling of Ricky Scott's testimony. Robinson faults trial counsel for not claiming that Scott was not "unavailable"[1] because the prosecutor was willing to grant Scott immunity. Specifically, the prosecutor argued that Scott should be deemed "unavailable" pursuant to New York Criminal Procedure Law ("C.P.L.") § 670.10 because he had invoked his Fifth Amendment privilege against self-incrimination. The prosecutor urged that Scott's prior testimony should be admitted into evidence at the present trial. In the alternative, the prosecutor argued that if the trial court refused to introduce Scott's prior testimony, he would then agree to the trial court conferring immunity upon him.[2] Thus, immunity would not be requested by the prosecutor *unless* the trial court deemed Scott to be "available" and, as a consequence, declined admission of his prior testimony.

As respondent points out, the law was clear–Scott was unavailable; his intention was to refuse to testify again under any circumstances. The issue of immunity thus never had to be

---

[1] As a matter of New York state law, Scott was unavailable based upon Scott's attorney's representation to the court that Scott would invoke the Fifth Amendment. N.Y. CRIM. PROC. LAW § 670.10; *see also People v. Snow*, 298 A.D.2d 985 (App. Div. 4th Dept. 2002) ("We conclude that the court properly determined that the complainant, who appeared at trial on a warrant issued upon a material witness order, was unavailable when she advised the court that she would invoke her Fifth Amendment privilege against self-incrimination and in fact did so. We further conclude that defendant had a fair opportunity to cross-examine the complainant at the preliminary hearing and thus reject his contention that he was denied his Sixth Amendment right to confront the complainant.") (internal citations omitted).

[2] The prosecutor may, in his or her discretion, request that the court confer immunity, but the trial court has the sole authority to confer immunity upon a witness. *See* N.Y. CRIM. PROC. LAW § 50.30 ("In any criminal proceeding, other than a grand jury proceeding, the court is a competent authority to confer immunity in accordance with the provisions of section 50.20 [of the C.P.L.], but only when expressly requested by the district attorney to do so."); *People v. Owens*, 63 N.Y.2d 824, 825-26 (N.Y. 1984) ("Though a prosecutor possesses the discretion to determine when to immunize a witness, this discretion is subject to review for abuse . . . .") (internal citations quotations omitted).

reached by the prosecutor or the trial court. Even if immunity had been granted to Scott and he continued to refuse to testify, he would have remained "unavailable" for trial, his prior testimony would have been–and was–properly admitted into evidence.[3] The error alleged in this regard was not error at all; plainly, Scott was "unavailable" and the issue of immunity never arose. Accordingly, there is no basis for faulting counsel's performance in connection with Scott's testimony.

## IV. Conclusion

For the reasons set forth above, petitioner Ramone Robinson's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. In light of the dismissal of the petition, Robinson's pending motion for an evidentiary hearing (Docket No. 11) is dismissed as moot. Because Robinson has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: September 30, 2010
Buffalo, New York

---

[3] Moreover, contrary to petitioner's suggestion, he was not denied his Sixth Amendment right to confrontation. Petitioner had a full opportunity to cross-examine Scott during his first trial. People v. Snow, 298 A.D.2d at 985 (citation omitted). Scott's direct and cross-examination testimony from petitioner's first trial were read to the jury at petitioner's subsequent trial.